# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

SYED ASKARI,

      Plaintiff,

vs.                                                                                            Civ. No. 2:24-07 GJF/JHR

TAJ AND ARK, LLC,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment [ECF 42] (the "Motion"), which is fully briefed. ECFs 42, 43, 45. Having thoroughly considered the filings and arguments, the record evidence, and the relevant law, the Court concludes that the Motion is well-taken. Thus, for the reasons explained below, Defendant's Motion is **GRANTED**.

## I.   BACKGROUND[1]

This case arises out of a residential construction contract. Plaintiff Syed Askari ("Askari") communicated with Defendant Taj & Ark, LLC ("Taj & Ark") in 2013 about building a home for Askari's father. ECF 44 at 8. In 2014, through three separate contracts (the "construction contracts"), Taj & Ark agreed with Askari to build the home in Anthony, New Mexico. *See* Def.'s Mot. for Summ. J., Undisputed Fact (hereinafter Def's UF) ¶ 1 (citing ECF 42-1 at 1 ¶ 3 (Hindash Affidavit)); ECF 42-1 at 5–12 (Exs. A1, A2, A3).[2] A dispute arose about the parties' respective

---

[1] Defendant Taj & Ark, LLC included in its Motion nine "statement[s] of material facts as to which there is no genuine dispute." ECF 42 at 3–4 ¶¶ 1–9. In support of these facts, Taj & Ark cites statements in an attached affidavit of Tawfiq Hindash [*see id.*], Taj & Ark's owner and manager at all relevant times [ECF 42-1 at 1 ¶ 2]. Plaintiff Syed Askari included some factual information in his response to the Motion [*see* ECF 43], but he filed his factual contentions separately in a document objecting to Tawfiq Hindash's affidavit [*see* ECF 44]. Askari disputes Taj & Ark's facts. *See* ECFs 43, 44. The facts in genuine dispute, however, are not material. The Court will explain the disputes—and why they do not preclude summary judgment—in footnotes within this section of its Memorandum Opinion and Order.

[2] To this, Askari lists several objections. *See* ECF 44 at 2–3 ¶¶ 6–11. First, he insists that Taj & Ark fraudulently induced him to sign the contracts, threatening to put a lien on the house. *Id.* at 2 ¶ 6. Second, Askari contends that Taj & Ark contracted to build Askari's father, not Askari, a house. *Id.* at 2 ¶ 7. Third, Askari alleges that Taj & Ark refused to install "elderly accommodation appurtenances" after Askari informed Taj & Ark that Askari's father needed such

duties under the contracts. Def's UF ¶ 2; *see* ECF 44 at 2–3 ¶¶ 8–11; ECF 42-1 at 16–20 (Ex. C). In November 2015, the parties agreed to resolve their dispute, signing a settlement agreement in which each party agreed not to sue the counterparty. Def's UF ¶ 2; ECF 42-1 at 14 (Ex. B).[3] Other than the construction contracts and settlement agreement, the parties have not entered into any other relevant contracts. Def's UF ¶ 3 (citing ECF 42-1 at ¶ 4 (Hindash Affidavit)); ECF 44 at 15.[4]

Askari sued Taj & Ark in New Mexico state court on December 30, 2016. ECF 42-1 at 16–20 (Ex. C); *Askari v. Taj & Ark*, D-307-CV-2016-2919. There, Askari accused Taj & Ark of breaching the construction contracts, of racketeering and conversion directed at the United States Department of the Treasury, and of misappropriating funds belonging to the United States Department of Agriculture and the "Tax Payers." ECF 42-1 at 18–19 (Ex. C). Askari's breach of contract and breach of warranty claims survived to trial. ECF 42-1 at 30 (Ex. D). The Court entered a directed verdict in Taj & Ark's favor on the breach of contract claims, and the jury returned a

---

appurtenances. *Id.* at 2–3 ¶¶ 8, 11. Fourth, Askari argues that Taj & Ark abandoned the construction project before completion and failed to install functioning HVAC systems, as required by the contracts. *Id.* at 3 ¶¶ 9–10. Because the Court must resolve all reasonable inferences in Askari's favor as the nonmovant, the Court assumes as correct Askari's factual assertions listed in this footnote. *See SEC v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013). These factual assertions would be material only to a breach of contract claim or a defense against contract formation. But, as the Court will explain *infra* Part IV(B)(1), Askari is precluded from arguing that Taj & Ark breached the contracts. Thus, Taj & Ark is entitled to summary judgment even if it breached the contracts, and these genuinely disputed facts are not material.

[3] Askari lists two objections. *See* ECF 44 at 3–4 ¶¶ 12–13. First, he implies that the settlement agreement is either invalid or did not prevent the parties from suing one another. *See id.* at 3 ¶ 12. Second, Askari argues that Taj & Ark violated the settlement agreement. *Id.* at 3–4 ¶ 13. The Court rejects as unreasonable Askari's first objection because an agreement he signed stated, "[n]o law suits from both parties against each other's [sic]." ECF 42-1 at 14 (Ex. B). The waiver exists; its scope is a legal question. Additionally, Taj & Ark's alleged violation of the settlement agreement is not a material fact. Askari would have to file a new breach of contract action or a motion to enforce the settlement agreement to bring that issue before the court. In any event, as explained in this Order, Taj & Ark is entitled to summary judgment even if it breached the settlement agreement or if the settlement agreement is unenforceable. Accordingly, these genuinely disputed facts are not material

[4] Taj & Ark contends that the three construction contracts and the one settlement agreement are the only contracts between the parties. Def's UF ¶ 3. Askari disputes this, pointing to a document titled "SETTLEMENT CONTRACT," where Taj & Ark agreed to withdraw an accusation regarding a change order. ECF 44 at 15. The Court takes Askari's point that there is one other contract between the parties. This factual dispute, however, is not material because the existence of that change order does not impact the Court's analysis.

verdict for Taj & Ark on the breach of warranty claims. *Id.* Askari appealed, and the New Mexico Court of Appeals affirmed. ECF 42-1 at 33–37 (Ex. E).

Askari sued Taj & Ark in this Court on December 28, 2022. *Askari v. Taj & Ark*, No. 22-CV-984 JB/KRS (ECF 1). There, Askari accused Taj & Ark of evading taxes and depriving the Internal Revenue Service (IRS) of funds, insisting that he brought the action on his own behalf to protect the interests of the IRS. No. 22-CV-984 JB/KRS (ECF 9). Askari accused Taj & Ark of violating constitutional provisions governing tax collection and of negligently causing him physical and emotional harm. *Id.* Askari sought only an order requiring Taj & Ark to pay the taxes it had evaded, plus a penalty; he sought no damages for his own harm. *Id.* On February 27, 2023, Judge Browning dismissed with prejudice Askari's constitutional claims and dismissed without prejudice Askari's negligence claims because Askari failed to allege that he suffered harm in an amount sufficient to trigger this Court's diversity jurisdiction. No. 22-CV-984 JB/KRS (ECF 12).

Askari initiated this case on January 2, 2024. ECF 1. He filed the operative amended complaint (the "Complaint") on May 31, 2024. ECF 10. There, Askari alleges that Taj & Ark (1) caused him emotional harm by failing to pay taxes;[5] (2) should be held in contempt for not answering or otherwise responding in Askari and Taj & Ark's other case before this Court; (3) acted negligently and in bad faith through its defense in this case; (4) breached a fiduciary duty; (5) breached the construction contracts; (6) will cause Askari future pain and suffering;[6] (7)

---

[5] Askari alternates between accusing Taj & Ark of negligently and intentionally causing him emotional distress by evading taxes. *See* ECF 10. Thus, the Court reads the Complaint to seek relief for emotional harm under alternative theories: one for intentional infliction of emotional distress and one for negligent infliction of emotional distress.

[6] The Court analyzes Askari's claim for future emotional distress in conjunction with his claims for past and current emotional distress because the same analysis applies. Any decision as to any of Askari's claims for emotional distress also covers his claim for future emotional distress. For example, future emotional distress may be too speculative to confer standing, but Askari lacks standing to allege future emotional distress for the same causation and redressability reasons explained *infra* Part IV(1).

converted Askari's money;[7] and (8) caused Askari a loss of consortium. *Id.* at 2–5 ¶¶ 2–14.[8] Askari seeks $76,000 in damages for emotional distress. *Id.* at 5 ¶ 15. After an unsuccessful settlement conference [ECF 41], Taj & Ark filed the present Motion [ECF 42].

Askari's Complaint is unique. Having lost in state court on his breach of contract claims and having lost in this Court for failing to allege specific harm, Askari now insists that Taj & Ark's failure to pay taxes on money that it received pursuant to the construction contracts and settlement agreement has caused him emotional distress. *See* ECF 10. As such, much of the parties' factual discussion focuses on Taj & Ark's tax liability and whether it paid its taxes in full. *See* ECF 42 at 3–4 ¶¶ 4–6; ECF 43 at 2–4 ¶¶ 7, 10–15; ECF 44 at 4–5 ¶¶ 15–18. These facts are not material because they will not affect the outcome of this case. As the Court will explain, Taj & Ark's Motion is well-taken on numerous grounds, none of which require a finding that Taj & Ark evaded taxes.

Askari's claims fit into three categories. *See* ECF 10. First are his tort claims where he accuses Taj & Ark of causing him emotional distress by failing to pay taxes and of causing him a

---

[7] The Court addresses this cause of action with minimal discussion. "[W]here the facts alleged in support of a tort claim are 'precisely' the same as those alleged in support of a contract claim, the tort claim will not lie." *Anderson Living Tr. v. Energen Res. Corp.*, No. 12-CV-352 JCH/KBM, 2013 WL 12182932, at *8 (D.N.M. Mar. 21, 2013) (quoting *Isler v. Tex. Oil & Gas Corp.*, 749 F.2d 22, 24 (10th Cir. 1984)). In *Anderson*, Judge Herrera reasoned that plaintiffs could not "distinguish their conversion claim from their breach-of-contract claim" by arguing that the item allegedly paid for through a contract was converted. *Id.* "This [was] not a meaningful distinction," Judge Herrera wrote, because "[t]he parties' contract governs Defendant's liability, if any, . . . and Plaintiffs' conversion claim must be dismissed." *Id.* (citation omitted). Similarly, here, Askari alleges that Taj & Ark converted his money, and the record mentions no source of this money other than the construction contracts. *See* ECF 10 at 5 ¶ 13. Accordingly, the construction contracts govern this claim, and Taj & Ark is entitled to summary judgment on Askari's breach of contract claims. *See infra* Part IV(B)(1)-(2).

[8] While not listed as a cause of action, Askari insists that Taj & Ark violated the "Deceptive Trade Practices Act" by "confiscation of Plaintiff's thousands of dollars." ECF 10 at 3 ¶ 6. The Court considers this to be an allegation that Taj & Ark violated the New Mexico Unfair Practices Act (NMUPA). *See* N.M. Stat. Ann. §§ 57-12-1 through -26. An NMUPA cause of action requires (1) a false or misleading representation; (2) made in connection with the sale of goods or services; (3) occurring within the regular course of business; (4) that may mislead any person. *Lucero v. Travelers Com. Ins. Co.*, 647 F. Supp. 3d 1115, 1128 (D.N.M. 2022). Askari lacks standing to argue that Taj & Ark violated the NMUPA by making false or misleading representations to the IRS. *See infra* Part IV(A). Askari is precluded from arguing that Taj & Ark violated the NMUPA by confiscating money that Askari paid pursuant to the construction contracts. *See infra* Part IV(B)(1). Accordingly, to the extent the Complaint accuses Taj & Ark of violating the NMUPA, Taj & Ark is entitled to summary judgment.

loss of consortium. *See id.* Second are his contract-related claims where he insists that Taj & Ark breached contractual and fiduciary duties. *See id.* Third are his litigation conduct claims where he contends that Taj & Ark failed to respond or sought to avoid Askari's lawsuits. *See id.*

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and must designate specific facts derived from admissible evidence (affidavits, depositions, answers to interrogatories, or admissions) that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Only disputes of facts that might affect the outcome of the case will preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

### B.  Pro se Litigants

A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Specifically, a court "make[s] some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux*

& Janer, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted). A court will not, however, advocate for the pro se litigant, *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008), by "construct[ing] arguments or theories for the plaintiff in the absence of any discussion of those issues," *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

## III. PRIMARY ARGUMENTS

Taj & Ark asserts an entitlement to summary judgment on four grounds. ECF 42 at 5–8. First, it claims that it owed Askari no contractual duty to pay taxes. *Id.* at 5. Second, it argues that claim preclusion bars any contract-related claim brought against it by Askari. *Id.* at 5–6. Third, it contends that Askari's contract-related claims are untimely. *Id.* at 6–8. Fourth, it posits that the parties' settlement agreement prevents Askari from suing Taj & Ark at all. *Id.* at 8.

For his part, Askari argues that financial documents listing Taj & Ark's tax liability from transactions with Askari together with Taj & Ark's failure to provide evidence that it paid those taxes demonstrate a genuine issue of material fact. ECF 43 at 2–3. Askari claims that he will prove at trial that Taj & Ark did not pay those taxes. *Id.* As to claim preclusion, Askari insists that the doctrine does not apply because his Complaint brings different claims and was filed under a different case number. *See id.* at 2. As to the statute of limitations, Askari argues that Taj & Ark's contractual and fiduciary duties to him justify ignoring the statute of limitations, and Taj & Ark waived this defense by not asserting it in its answer. *Id.* at 4–5. As to the settlement agreement, Askari claims that it should not be given legal effect because Taj & Ark coerced Askari into signing it. ECF 44 at 3, 11.

In reply, Taj & Ark points out that Askari has not rebutted the material facts asserted in the Motion. ECF 45 at 1–2. In the absence of a genuine dispute of material facts, Taj & Ark contends that it is entitled to judgment as a matter of law on Askari's breach of contract and breach of

fiduciary duty claims. *Id.* at 2–3. Additionally, Taj & Ark requests that the Court sanction Askari for filing a frivolous lawsuit.[9]

## IV.  ANALYSIS

Taj & Ark meets its burden of showing that no genuine dispute exists as to any material fact. *See supra* Part I. In this section, the Court will explain why Taj & Ark also meets its burden of demonstrating entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56. This section proceeds in three parts. First, the Court will explain that Askari lacks standing to bring his tort claims. Second, the Court will explain that Taj & Ark is entitled to judgment as a matter of law on Askari's contract-related and tort claims. Third, the Court will explain that it will not sanction Taj & Ark or award Askari default judgment.

### A.  The Court dismisses Askari's tort claims because he lacks standing to bring them.

Standing is a jurisdictional prerequisite that courts can invoke *sua sponte* to ensure Article III compliance. *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002). "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies'" to protect the judiciary's "proper role in our system of government[.]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp v. Cuno*, 547 U.S. 332, 341 (2006)). "One element of the case-or-controversy requirement is that [plaintiffs] . . . must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (2006). To establish standing, a plaintiff must demonstrate (1) an "injury in fact"—that is, a violation of an interest that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct

---

[9] "[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief[.]" *See M.D. Mark, Inc. v. Kerr McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009). Taj & Ark argued for sanctions for the first time in its reply brief. *See* ECFs 42, 45. Accordingly, Taj & Ark waived this argument.

complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted) (collecting cases).

Because federal courts are of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction—standing included—to grant the relief requested. *Lujan*, 504 U.S. at 561.

> 1.  <u>Askari suffered an injury in fact because he alleges emotional harm.</u>

Only concrete and particularized harms satisfy the injury-in-fact requirement. *TransUnion LLC v. Ramirez¸* 594 U.S. 413, 424 (2021); *Lujan*, 504 U.S. at 560 n.1. A harm is concrete and particularized if it "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American Courts." *TransUnion, LLC*, 594 U.S. at 424 (quoting *Spokeo v. Robins*, 578 U.S 330, 341 (2016)). Emotional distress carries such a relationship. *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021) (Sutton, C.J.) (collecting sources); *Klonis v. Marine Corps Assoc.*, No. 24-CV-46 GJF/LF, 2024 WL 2721875, at *7 (D.N.M. May 28, 2024). Askari alleges that he suffered emotional distress. ECF 10. Accordingly, Askari satisfies the injury-in-fact requirement.

> 2.  <u>Askari fails to allege a causal connection between Taj & Ark's alleged tax evasion and his emotional distress because the derivative injury rule prevents a party from recovering for injuries flowing from harm directed at a third party.</u>

Causation exists if the injury-in-fact is fairly traceable to the defendant's conduct. *Lujan*, 504 U.S. at 560. An injury-in-fact is not fairly traceable, however, if it flows from harm directed at a third party not before the court. *See id.*; *Camden Cnty. Bd. of Chosen Freeholders v. Beretta*

*USA, Corp.* 123 F. Supp. 2d 245, 257 (D.N.J. 2000) (citing *Holmes v. Sec. Inv. Prot. Corp.* 503 U.S. 258, 268 (1992)); *Arias v. Dyncorp*, 738 F. Supp. 2d 46, 50–51 (D.D.C. 2010) (collecting cases). As such, a plaintiff's emotional harm is not fairly traceable to a defendant's wrongful conduct directed at a third party. *See Tovar v. Essentia Health*, 187 F. Supp. 3d 1055, 1062 (D. Minn. 2016) ("[w]hile the Court must take as true the fact that Tovar has been injured emotionally . . . , these purported injuries are *effects* of the discrimination her *son* allegedly endured"), *aff'd in relevant part, rev'd and remanded on other grounds*, 857 F.3d 771 (8th Cir. 2017); *Pierzynowski v. Police Dep't City of Detroit*, 941 F. Supp. 633, 640–41 (E.D. Mich. 1996); *Soto Gomez v. Lopez Feliciano*, 698 F. Supp. 28, 29–30 (D.P.R. 1988); *Smith-Lovejoy v. Nevada*, No. 17-CV-665 RCJ/VPC, 2018 WL 2188005, at *3 (D. Nev. Apr. 4, 2018), *report and recommendation adopted* 2018 WL 2188007.

The District of Nevada applied similar reasoning to a similar case in *Smith-Lovejoy*. *See Smith-Lovejoy¸* 2018 WL 2188005, at *3. There, the plaintiff sued two private businesses for tax evasion. *Id.* at *2. The court held that the plaintiff lacked standing. *Id.* at *3. The court reasoned that any harm the plaintiff suffered was not fairly traceable to the defendant's alleged tax evasion; at most, the plaintiff "implie[d] financial injury to the government, for which he would not have standing to sue." *See id.* (citing *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 136–44 (2011)). That plaintiff did not allege an injury-in-fact, but, if he did, it would not have changed the court's conclusion that the "plaintiff fails to suggest how such conduct caused him injury." *See id*.

Here, Askari's emotional distress is not fairly traceable to Taj & Ark's alleged tax evasion. *See Camden Cnty.*, 123 F. Supp. 2d at 257 (citing *Holmes*, 503 U.S. at 268); *Smith-Lovejoy¸* 2018 WL 2188005, at *3. Askari asserts that Taj & Ark's alleged tax evasion caused him emotional distress. ECF 10. But Taj & Ark's alleged tax evasion is harm directed at the government. *See*

*Smith-Lovejoy*, 2018 WL 2188005, at *3. Askari's emotional distress, therefore, flows from harm directed at the government. *See Holmes*, 503 U.S. at 268–69. Accordingly, Askari fails to establish the causation element.

      3.   <u>Askari's emotional distress cannot be redressed by a favorable decision because the Court would violate separation of powers principles by granting Askari relief.</u>

For a plaintiff to have standing, a court must be able to redress the plaintiff's injury by granting relief. *Lujan*, 504 U.S. at 561. Courts cannot grant relief if doing so would displace the discretion of the politically accountable executive and legislative branches. *TransUnion, LLC*, 594 U.S. at 423–24; *Lefebure v. D'Aquilla*, 15 F.4th 650, 654 (5th Cir. 2021) (collecting cases). Courts will displace the discretion of these branches only when they must do so to decide an actual case.[10] *TransUnion, LLC*, 594 U.S. at 429. The executive branch has discretion to prosecute violators of criminal statutes. *See id.*

In *Lefebure v. D'Aquilla*, the Fifth Circuit explained why a crime victim lacked standing to sue the "prosecutor for failing to investigate or indict her perpetrator." 15 F.4th at 654. There, the court stated that Article III prevents litigants from using the courts as tools to displace the executive branch. *Id.* (citing *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017)). The executive branch—not judges or crime victims—decides whether to prosecute crimes. *Id.* (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Thus, a court cannot redress an injury flowing from the executive branch's failure to prosecute a crime by awarding monetary relief. *See id.* at 655 (collecting cases).

---

[10] Courts raise separation of powers concerns within discussions of all three standing elements. *See TransUnion, LLC*, 594 U.S. at 429 ("the concrete-harm requirement is essential to the Constitution's separation of powers"); *Lefebure*, 15 F.4th at 654 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973)) ("a crime victim lacks standing to sue a prosecutor for failing to investigate or indict her perpetrator, due to lack of causation and redressability"). Here, given the facts of the case, such concerns are best addressed within this Court's discussion of redressability.

Here, unlike the plaintiff in *Lefebure*, Askari is not a crime victim suing the prosecutor for failing to prosecute a wrongdoer. *See id.* at 654–55. But the Fifth Circuit's analysis remains instructive. *See id.* Askari insists that Taj & Ark's alleged tax evasion caused him $76,000 in emotional distress. ECF 10 at 1–3 ¶¶ 1–2, 6. Redressing Askari's emotional distress, however, would displace executive branch discretion. *See TransUnion, LLC*, 594 U.S. at 429; *Lefebure*, 15 F.4th at 655. Tax evasion is a crime. 26 U.S.C. § 7201.[11] As such, "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute" a tax evader. *See Nixon*, 418 U.S. at 693. Thus, only a decision to prosecute Taj & Ark can redress Askari's emotional distress caused by Taj & Ark's tax evasion, and, by awarding monetary damages, the Court would impermissibly imply that the executive branch should have exercised its discretion to prosecute Taj & Ark.

Allowing Askari's tort claims to proceed would displace executive branch discretion by granting private citizens an impermissibly large role in criminal law enforcement. *See Laroe Ests., Inc.*, 581 U.S. at 438. Askari alleges that Taj & Ark committed a crime, which went unpunished by the executive branch and caused him emotional distress. *See* ECF 10. An order from this Court redressing Askari's emotional distress by compelling Taj & Ark to pay monetary damages would shift enforcement of the tax code from the executive branch to Askari. Such a result would encourage those who suspect another of criminal behavior to sue their criminal suspect for emotional distress. Allowing such lawsuits would shift enforcement of criminal laws from the

---

[11] Askari's response alleges for the first time that he suffered injury from Taj & Ark's efforts to evade New Mexico taxes. ECF 44 at 4–5 ¶¶ 15–18. Askari's allegations had focused thus far on federal taxes. *See, e.g.*, ECF 10 at 1–2 ¶ 1. Taj & Ark insists that Askari changed his strategy upon learning that Taj & Ark is an S corporation, which means it did not have to pay federal taxes on the payments received from Askari. ECF 45 at 2–3. The Court's analysis, though, still applies to state taxes. The executive branch has discretion to prosecute federal tax evaders; similarly, New Mexico, not the federal court, has discretion to prosecute New Mexican tax evaders.

politically accountable executive branch to the general public. Article III prohibits such a result; therefore, the Court dismisses Askari's tort claims for lack of standing. *See Nixon*, 418 U.S. at 693.

This Court's inability to redress Askari's injuries does not mean that they cannot be redressed. The politically accountable branches govern enforcement of criminal laws. *See id*. Thus, the law allows Askari to redress his injuries through the political process. *See id.* Congress criminalizes tax evasion, and the Department of the Treasury, through the IRS, enforces those criminal penalties. Askari remains able to support congressional candidates who will strengthen criminal penalties for tax evasion and presidential candidates who will enforce those penalties.

Askari insists that he has standing based on the First Amendment, the Federal Rules of Civil Procedure, 28 U.S.C. § 1343, the Privileges and Immunities Clause, and the Privileges or Immunities Clause. ECF 10 at 5–6 ¶ 17. His argument fails because it is Article III of the United States Constitution—and only Article III—that confers standing. *E.g.*, *TransUnion LLC*, 594 U.S. at 423. Accordingly, the Court dismisses Askari's tort claims for lack of standing.

**B. Taj & Ark is entitled to summary judgment because it established that Askari lacks a triable issue of material fact and is entitled to judgment as a matter of law.**

In this section, the Court explains that Taj & Ark is entitled to judgment as a matter of law for the following reasons: (1) claim preclusion bars Askari from relitigating his contract-related claims; (2) the settlement agreement precludes Askari from bringing his contract-related claims; (3) Askari's claims are untimely; and (4) no reasonable trier of fact could find for Askari on his

negligent infliction of emotional distress ("NIED") claim, his intentional infliction of emotional distress ("IIED") claim, or his loss of consortium claim.

> 1. Taj & Ark is entitled to judgment as a matter of law on Askari's breach of contract claims due to claim preclusion.

Claim preclusion prevents a party from bringing a claim that it already litigated and lost. *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006). New Mexico claim preclusion law determines whether a New Mexico state court judgment precludes a claim. *See Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258, 1264 (10th Cir. 2011). A claim is precluded if "(1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, —N.M.—, 342 P.3d 54 (citing *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87).

Here, the first three claim preclusion elements are met because the state court entered a final judgment on the merits in a suit by Askari against Taj & Ark. *See* ECF 42-1 at 16–20, 30, 33–37. The application of claim preclusion hinges on the same-cause-of-action element.

New Mexico and the Tenth Circuit consider any potential claim arising from a common nucleus of operative acts to be within the same cause of action. *See Potter*, 2015-NMSC-002, at ¶ 11. A contract is a common nucleus of operative facts; all potential claims arising from a contract, or set of contracts, are part of the same cause of action. *See Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1336 (10th Cir. 1988). Thus, a plaintiff is precluded from alleging new claims arising from a set of contracts in a second contract-related action, unless the causes of action accrued after the first final judgment. *See id.*

Askari is precluded from bringing his contract-related claims because they are part of the same cause of action that was decided in a final judgment on the merits between the same parties.

*See id.*; *Potter*, 2010-NMSC-014, ¶ 10. Askari's state court complaint accused Taj & Ark of breaching the construction contracts. ECF 42-1 at 16–20. That state court complaint was Askari's opportunity to bring all claims arising out of those contracts. *See Petromanagement Corp.*, 835 F.2d at 1335. In the present Complaint, Askari's breach of contract claims allege that those same contracts, and fiduciary duties arising out of them, were breached. *See* ECF 10 at 4 ¶¶ 7–9. Additionally, Askari's alleged breaches occurred before the first final judgment. *See* ECF 10 at 1–2 ¶ 1 (accusing Taj & Ark of evading tax fraud in tax years 2014, 2015, and 2016); ECF 42-1 at 30 (final judgment entered May 6, 2019). In any event, these claims are meritless because Taj & Ark owed Askari no fiduciary duties,[12] and it had no contractual obligation to pay taxes that Askari could enforce. *See* ECF 42-1 at 4–12. Accordingly, Taj & Ark is entitled to judgment as a matter of law on Askari's contract-related claims because they are precluded.

      2.   <u>Taj & Ark is entitled to judgment as a matter of law on Askari's contract-related claims that accrued before November 25, 2015, because the settlement agreement bars such claims.</u>

Courts enforce settlement agreements unless they "clearly contravene some law or rule of public morals." *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 1989-NMSC-030, ¶ 14, 108 N.M. 467, 775 P.2d 233; *Builders Cont. Interiors, Inc. v. Hi-Lo Indus., Inc.*, 2006-NMCA-053, ¶ 8, 139 N.M. 508, 134 P.3d 795. Enforcing a settlement agreement contravenes some law or rule of public morals if it allows a party to escape tort liability for intentional or reckless conduct, or if it limits the ability to bring claims that accrued after the settlement agreement was

---

[12] Askari and Taj & Ark were never in a fiduciary relationship. Fiduciary relationships arise in contracts establishing a relationship of trust and confidence, such as between an investor and a financial advisor. *See New Mexico ex rel. Udall v. Colonial Penn Ins. Co.*, 1991-NMSC-048, ¶ 33, 112 N.M. 123, 812 P.2d 777. A buyer-seller contract negotiated at arm's length does not create a relationship of trust and confidence, even if one party has superior information and bargaining power. *See Cont'l Potash, Inc. v. Freeport-McMoran, Inc.* 1993-NMSC-039, ¶ 44, 115 N.M. 690, 858 P.2d 66; *Valerio v. San Mateo Enters., Inc.*, 2017-NMCA-059, ¶¶ 24–25, —N.M.—, 400 P.3d 275; *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 56, 133 N.M. 669, 68 P.3d 909. The contracts between Askari and Taj & Ark do not create a relationship of trust and confidence; rather, they are arm's length deals between a buyer and seller. *See* ECF 42-1 at 24–25. Accordingly, no fiduciary relationship existed.

entered into. *See Mata v. Anderson*, 685 F. Supp. 2d 1233, 1260–62 (D.N.M. 2010) (citing *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, ¶ 26, 134 N.M. 341, 76 P.3d 1098)

Here, Askari and Taj & Ark entered into a settlement agreement on November 25, 2015. ECF 42-1 at 14 (Ex. B). The settlement agreement resolves the parties' dispute over the construction contracts. *See id.* It provides that "any other claims by both parties are void[,]" and it prohibits "law suits [sic] from both parties against each other[]." *Id.* Thus, the parties' settlement agreement bars claims arising out of the construction contracts that accrued before November 25, 2015. *See United Wholesale Liquor Co.*, 1989-NMSC-030, ¶ 14. Accordingly, Taj & Ark is entitled to judgment as a matter of law on contract related claims accruing before November 25, 2015.

  3. <u>Taj & Ark is entitled to judgment as a matter of law on Askari's claims because they are untimely.</u>

New Mexico has a six-year statute of limitations for contract-related claims, N.M. Stat. Ann. § 37-1-3, and a three-year statute of limitations for personal injury claims, including claims alleging emotional distress and loss of consortium, *see* N.M. Stat. Ann. § 37-1-8; *Williams v. Stewart*, 2005-NMCA-061, ¶ 10, 137 N.M. 420, 112 P.3d 281; *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶ 8, —N.M.—, 397 P.3d 1279. The filing period begins to run when the cause of action accrues. *Roberts v. S.W. Community Health Servs.*, 1992-NMSC-042, ¶ 15, 114 N.M. 248, 837 P.2d 442. A personal injury action accrues when the plaintiff acquires knowledge of facts that would cause a reasonable person to inquire further, leading to the discovery of the cause of action. *See Gerke v. Romero*, 2010-NMCA-060, ¶ 9, 148 N.M. 367, 237 P.3d 111.

Askari's contract-related claims are untimely. Askari filed this case on January 2, 2024 [ECF 1], meaning that only contract-related claims accruing January 2, 2018, or later are timely. *See* N.M. Stat. Ann. § 37-1-3. The settlement agreement, which the parties signed on November

28, 2015, and the state court complaint alleging breach of the construction contracts, filed December 30, 2016, indicate that any contract-related claim had to have accrued prior to January 2, 2018. *See* ECF 42-1 at 14, 15–20. Accordingly, such claims are untimely.

Askari's tort claims are untimely because they are personal injury claims that accrued more than three years before they were brought. *See* N.M. Stat. Ann. § 37-1-3; *Williams*, 2005-NMCA-061, ¶ 10; *Thompson*, 2017-NMSC-021, ¶ 8. Askari's personal injury actions are timely only if they accrued on or after January 2, 2021. *See* N.M. Stat. Ann. § 37-1-8. Askari's tort claims accrued before then because he had knowledge of facts sufficient to inquire further into these claims in the late 2010s. Askari accuses Taj & Ark of evading taxes in 2014, 2015, and 2016. ECF 10 at 1–2 ¶ 1. On December 30, 2016, Askari sued Taj & Ark in state court for breach of contract, citing specifically the amount of money he had paid Taj & Ark to date. ECF 42-1 at 16–21. Under Askari's reading of relevant tax law, he could have gone to Taj & Ark's office to inspect documents relevant to its tax code compliance. *See* ECF 43 at 4 ¶ 14. In a May 20, 2017 state court filing, Askari alleged that Taj & Ark's embezzlement harmed the United States Department of Agriculture. ECF 44 at 17–20 ¶¶ 4, 13. There, he accuses Taj & Ark of similar misconduct alleged in the present Complaint under an embezzlement, as opposed to a tax evasion, theory.[13] *Compare* ECF 10, *with* ECF 44 at 17–21.

Askari advances two unpersuasive arguments for why this Court should find his tort claims timely. First, Askari insists that Taj & Ark engaged in fiduciary misconduct, which "cannot be ignored" by finding claims untimely. ECF 43 at 5 ¶ 19 (citing *S.V. v. R.V.*, 933 S.W.2d 1 (Tex.

---

[13] Askari insists that Taj & Ark engaged in "fraudulent concealment of facts" by changing business names to evade taxes, which tolls the statute of limitations for his tort claims. *See* ECF 10 at 1–2 ¶ 1. Not so. Fraudulent concealment of a cause of action will toll the statute of limitations. *Est. of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 8, — N.M.—, 373 P.3d 977. Askari, however, has no cause of action against Taj & Ark for Taj & Ark's tax evasion. *Supra* Part IV(A). In any event, Askari fails to provide any evidence from which a reasonable trier of fact could conclude that Taj & Ark fraudulently concealed its tax evasion by changing business names. Accordingly, Taj & Ark's alleged fraudulent concealment does not save Askari's tort claims.

1996)). This argument is unpersuasive because Askari and Taj & Ark were never in a fiduciary relationship. *See supra* note 12.

Second, Askari insists that Taj & Ark waived the right to invoke the statute of limitations as a defense. ECF 43 at 5 ¶ 20. Indeed, Federal Rule of Civil Procedure 8(c) requires that affirmative defenses, such as the statute of limitations, be invoked in the response to the complaint, and a reservation of the right to raise affirmative defenses as the case progresses is not an affirmative defense. *See Martinez v. Naranjo*, 328 F.R.D. 581, 594 (D.N.M. 2018). Generally, parties resolve disputes over a defendant's reservation of unpled affirmative defenses through Rule 12(f) motions to strike and Rule 15(a) motions to amend. *E.g.*, *Rivero v. Bd. of Regents of Univ. of N.M.*, No. 16-CV-318 JB/SCY, 2019 WL 1085179, at *51–52 (D.N.M. Mar. 7, 2019). A court can, however, allow the defendant to assert an unpled affirmative defense for the first time in a motion for summary judgment when Rule 8(c)'s purpose is satisfied. *See Ahmad v. Furlong*, 435 F.3d 1196, 1201–02 (10th Cir. 2006). Rule 8(c)'s purpose is to avoid surprise by putting the plaintiff on notice in advance of trial that the defendant will assert a specific defense. *See id.*; *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443–44 (10th Cir. 1992) (reasoning that plaintiff was not prejudiced when a defendant asserted for the first time an affirmative defense in a motion for summary judgment at least three months prior to trial).

Here, Taj & Ark can assert a statute of limitations defense for the first time in the present Motion because Rule 8(c)'s purpose is satisfied. *See Ahmad*, 435 F.3d at 1201–02; *Ball Corp.*, 967 F.2d at 1444–45. Taj & Ark did not assert the statute of limitations as an affirmative defense. ECF 15 at 1. Instead, it reserved the right to raise affirmative defenses as they became known. *Id.* Ordinarily, Askari would have filed a Rule 12(f) motion to strike this ineffective reservation, and Taj & Ark would have filed a Rule 15(a) motion to amend its answer once it realized that Askari

filed untimely claims. *See Rivero*, 2019 WL 1085179, at *51–52. Askari, however, received notice that Taj & Ark asserted a statute of limitations defense roughly three months before trial. ECF 34, 42, 43 at 5 ¶¶ 18–19. Moreover, any prejudice is negligible because Taj & Ark is entitled to summary judgment on other grounds. Askari's tort claims are untimely; therefore, Taj & Ark is entitled to judgment as a matter of law. The Court will now address the merits of Askari's tort claims and explain why the Motion is well taken even if Askari had standing and timely brought his claims.

### 4. Taj & Ark is entitled to judgment as a matter of law on Askari's negligent infliction of emotional distress claim because no reasonable trier of fact could find for Askari.

Negligent infliction of emotional distress (NIED) "is an extremely narrow tort that compensates a bystander who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member." *Fernandez v. Walgreen Hastings Co.*, 1998-NMSC-039, ¶ 6, 126 N.M. 263, 968 P.2d 774 (collecting cases); *see Jaynes v. Strong-Thorne Mortuary, Inc.* 1998-NMSC-004, ¶ 21, 124 N.M. 613, 954 P.2d 45. An NIED cause of action may arise from a contractual relationship, but only when the contract is for services that by their very nature would cause mental anguish if not performed properly, such as funeral services. *Flores v. Baca*, 1994-NMSC-021, ¶¶ 12–14, 117 N.M. 306, 871 P.2d 962.

Taj & Ark is entitled to judgment as a matter of law on Askari's claims that Taj & Ark negligently inflicted emotional distress by failing to pay taxes. *See Fernandez*, 1998-NMSC-039, ¶ 6, *Flores*, 1998-NMSC-004, ¶ 21. No reasonable trier of fact could conclude that Askari suffers emotional distress as a result of witnessing a sudden, traumatic event that caused severe injury or death to a family member; he alleges that he suffers emotional harm because Taj & Ark committed tax evasion. ECF 10 at 1–3 ¶¶ 1–6. Further, unlike the contract for funeral services in *Flores*, the construction contracts called for Taj & Ark to build Askari a residence [*id.* at 1 ¶ 1], which is not

a service that by its very nature would cause mental anguish if not performed properly, *see generally Castillo v. City of Las Vegas*, 2008-NMCA-141, ¶ 21, 145 N.M. 205, 195 P.3d 870 (holding that a plaintiff cannot recover for emotional distress caused by negligent damage to a home). Accordingly, Taj & Ark is entitled to judgment as a matter of law on Askari's NIED claim.

> 5. <u>Taj & Ark is entitled to judgment as a matter of law on Askari's intentional infliction of emotional distress claim because no reasonable trier of fact could find for Askari.</u>

A plaintiff alleging intentional infliction of emotional distress (IIED) must prove the following elements: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333 (internal quotation marks omitted) (quoting *Hakkila v. Hakkila*, 1991-NMCA-029, ¶ 46, 112 N.M. 172, 812 P.2d 1320 (Donnelly, J., concurring)); *Hartigan v. Cnty. of Guadalupe*, No. 17-CV-537 RB/GJF, 2017 WL 4773268, *8 (D.N.M. Oct. 20, 2017) (applying New Mexico law).

Conduct is extreme and outrageous when it "go[es] beyond all possible bounds of decency" and is "regarded as atrocious, and utterly intolerable in a civilized community." *Trujillo*, 2002-NMSC-004, ¶ 25 (internal quotation marks omitted) (quoting Restatement (Second) of Torts § 46 cmt. d). Criminal intent does not make conduct extreme and outrageous. Restatement (Second) of Torts § 46 cmt. d. Tax evasion may become extreme and outrageous conduct if the defendant abuses a relationship with the plaintiff to shift the defendant's tax burden onto the plaintiff. *See Duet v. Landry*, 250 So. 3d 918, 923–24 (La. App. 2018).

Emotional distress is extreme and severe when no reasonable person can be expected to endure it. *Dominguez v. Stone*, 1981-NMCA-146, ¶ 16, 97 N.M. 211, 638 P.2d 423 (citing

Restatement (Second) of Torts § 46 cmt. j). Emotional distress is *not* extreme and severe when it consists merely of mental suffering and anguish. *Id.* (citing Restatement (Second) of Torts § 46 cmt. j); *see E.E.O.C. v. Univ. of Phoenix, Inc.*, 505 F. Supp. 2d 1045, 1062–63 (D.N.M. 2007) (reasoning that a plaintiff who felt like vomiting, had sleep issues, sought medical assistance, took medication, and was too tired and emotionally distracted to care for her children for a month did not suffer extreme and severe emotional distress); *Trujillo*, 2002-NMSC-004, ¶ 28 (reasoning that a plaintiff who was prescribed Prozac, slept long hours, adopted erratic eating habits, and felt "lousy and depressed" did not suffer extreme and severe emotional distress).

Here, Taj & Ark is entitled to judgment as a matter of law on Askari's IIED claim because no reasonable fact finder could find for Askari. *See Trujillo*, 2002-NMSC-004, ¶ 25. First, tax evasion is not extreme and outrageous conduct that is utterly intolerable in a civilized community. *See generally* IRS: The Tax Gap*, Internal Revenue Service*, https://www.irs.gov/statistics/irs-the-tax-gap (reporting only an 86.9% net compliance rate with the tax code in 2022).

Second, Askari does not point to any evidence from which a trier of fact could conclude that Taj & Ark evaded taxes with intent to cause, or with reckless disregard to the fact that it would cause emotional distress to Askari

Third, Askari did not suffer emotional distress so extreme and severe that no reasonable person could be expected to endure it. *See Dominguez*, 1981-NMCA-146, ¶ 16. The plaintiffs in *University of Phoenix* and *Trujillo* had stronger evidence than Askari as to this element, and they did not prevail. *See Univ. of Phoenix*, 505 F. Supp. 2d at 1062–63; *Trujillo*, 2002-NMSC-004, ¶ 28. Askari alleges that he feels depression, anguish, suffering, grief, and distress. ECF 10 at 2–6 ¶¶ 2, 5–6, 8–12, 19. Askari's emotions, while unfortunate, can be endured by reasonable people; everyone will experience these emotions at some point in life. *See Dominguez*, 1981-NMCA-146,

¶ 16. In any event, Askari points to no evidence from which a reasonable trier of fact could conclude that he suffers emotional distress. *See Celotex Corp.*, 477 U.S. at 324.

Fourth, having failed to allege extreme and outrageous conduct or extreme and severe emotional distress, Askari cannot establish that Taj & Ark's conduct caused such distress. *See Trujillo*, 2002-NMSC-004, ¶ 25. Accordingly, Taj & Ark is entitled to judgment as a matter of law on Askari's IIED claim because no reasonable trier of fact could find for Askari.

6.  <u>Taj & Ark is entitled to judgment as a matter of law on Askari's loss of consortium claim because no reasonable trier of fact could find for Askari.</u>

A loss of consortium cause of action compensates injury to a relationship. *Duran v. United Tactical Sys., LLC*, 586 F. Supp. 3d 1106, 1113–14 (D.N.M. 2022) (applying New Mexico law). A plaintiff alleging loss of consortium must demonstrate (1) a sufficiently close relationship between the plaintiff and the injured party; and (2) a duty of care owed by the defendant to the plaintiff. *Wachowski v. Bernalillo Cnty. Sheriff's Dep't*, 2011-NMSC-039, ¶ 5, 150 N.M. 650, 265 P.3d 701. Courts consider many factors to determine whether the plaintiff and the injured party shared a sufficiently close relationship. *See id.*

Here, no reasonable trier of fact could conclude that Askari shared a sufficiently close relationship with an injured party. *See Duran*, 586 F. Supp. 3d at 1113–14; *Wachowski*, 2011-NMSC-039, ¶ 5. In its entirety, Askari's "CLAIM FOR LOSS OF CONSORTIUM" reads "Plaintiff['s] loss of consortium is a direct cause resulted from the Defendant's unlawful actions. [sic]" ECF 10 at 5 ¶ 14. The only possible relationship that could be the subject of this claim is the one between Askari and his father. Although Askari contracted with Taj & Ark to build a home for his father [*see* ECF 44 at 8, 10], there is no other evidence in the record from which a trier of fact could determine that Askari's relationship with his father was sufficiently close for purposes of a

loss of consortium claim. *See Wachowski*, 2011-NMSC-039, ¶ 5. Accordingly, Taj & Ark is entitled to judgment as a matter of law on that claim.

### C.  The Court declines to sanction Taj & Ark or award default judgment.

In his Complaint, Askari includes causes of action titled "CLAIM FOR DEFENDANT'S RESPONSIVENESS TO THE SUMMONS" and "CLAIM FOR DEFENDANT'S NEGLIGENCE TO THIS CASE MATTER." ECF 10 at 4–5 ¶¶ 10, 12. The Court construes these as a request for Rule 11 sanctions and a request for a Rule 55 default judgment.[14] *See Hall*, 935 F.2d at 1110. As relevant here, Rule 11 prohibits a party from presenting to a court any submission intended to cause unnecessary delay. Fed. R. Civ. P. 11(b)(1). Rule 55 allows a plaintiff to request the relief sought in the complaint when the defendant fails to enter a pleading or otherwise defend the action. Fed. R. Civ. P. 55(a).

As to Rule 11, Askari does not point to any submission intended to cause unnecessary delay. ECF 10 at 4–5 ¶¶ 10, 12. As to Rule 55, Askari argues that Taj & Ark has been negligent in responding to this case and that Taj & Ark failed to file an answer and otherwise did not respond in a previous dispute between the parties. *Id.* Askari's arguments are unavailing because Taj & Ark has complied with all deadlines. It filed its answer on the deadline to do so [ECFs 13, 15]; it entered its consent to the undersigned presiding fourteen days before the deadline to do so [ECFs 17, 20]; it filed the joint status report on the deadline to do so [ECFs 25, 27]; and it filed its dispositive motion on the deadline to do so [ECFs 30, 42].

Askari argues also that Taj & Ark acted negligently in defending a case that closed roughly two years ago. *Askari v. Taj & Ark*, No. 22-CV-984 JB/KRS. Askari insists that, there, Taj & Ark failed to respond to his complaint. ECF 10 at 4 ¶ 10. While technically true, Taj & Ark did not

---

[14] To the extent that Askari alleges that Taj & Ark's litigation strategies caused him emotional distress, Askari falls far short of raising triable issues as to NIED or IIED. *See supra* Parts IV(B)(4)-(5).

need to respond because Judge Browning dismissed that complaint before Taj & Ark's response deadline. *See* No. 22-CV-984 (ECFs 11, 12). Regardless, the proper avenue for the relief Askari seeks would have been to file a motion for default judgment filed under that case number. *See* Fed. R. Civ. P. 55(a). Accordingly, no sanctions or default judgment are warranted in this case.

## V.   CONCLUSION

For the forgoing reasons, the Court holds that Taj & Ark is entitled to summary judgment with respect to Askari's claims. **IT IS THEREFORE ORDERED** that Taj & Ark's Motion for Summary Judgment [ECF 42] is **GRANTED**. **IT IS FURTHER ORDERED** that the claims in Askari's Complaint [ECF 10] are **DISMISSED WITH PREJUDICE**. The Court will file a separate Judgment under Federal Rule of Civil Procedure 58(a) dismissing this action with prejudice.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***